Robert D. Marshall and Helen B. Marshall v. Commissioner.
Marshall v. Commissioner
Docket No. 78898.
United States Tax Court
T.C. Memo 1960-288; 1960 Tax Ct. Memo LEXIS 11; 19 T.C.M. (CCH) 1577; T.C.M. (RIA) 60288; December 30, 1960
*11 Petitioners are not entitled to deduction for a nonbusiness bad debt where evidence fails to show that debt became totally worthless in year in which deduction is claimed. Charles Blair, Esq., for the petitioner. Seymour I. Sherman, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: The respondent determined a deficiency in the income tax of petitioners in the amount of $13,900.53 for the taxable year 1954. The sole issue for decision is whether petitioners are entitled to a deduction of $50,200 as a nonbusiness bad debt. The Commissioner, in disallowing this deduction, stated in the notice of deficiency: It is held that worthlessness of advances of $50,200.00 to Tech-Mulsion Corporation did not occur during the taxable year 1954; therefore, deduction claimed *12 in that amount for nonbusiness bad debt is not allowable under the provisions of Section 166 of the Internal Revenue Code of 1954. Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioners are individuals, husband and wife, with a mailing address at P.O. Box 520, Rock Island, Illinois. They filed their joint Federal income tax return for the calendar year 1954 on the cash receipts and disbursements basis with the director of internal revenue at Chicago, Illinois. In January 1952 Tech-Mulsion Corporation, hereinafter referred to as T-M, was organized to engage in the photoprint business. At the time of its organization it expected to obtain a large volume of business from Aurora Aircraft Corporation for reproduction work on a large contract that Aurora Aircraft expected to receive from the United States Government. Aurora Aircraft failed to receive the contract it expected and the business that it gave to T-M was considerably less than T-M had anticipated. T-M obtained some other business from the aircraft industry and some canvas reproduction business. T-M's total original capital was $2,100 of which petitioners contributed *13 $600 for their own account. T-M's operations required substantial additional funds and from 1952 through August 1954 petitioners advanced a total of $50,200 to T.M. in the amounts and on the dates as follows: Date
Amount
2- 4-52
$ 5,000.00
2- 5-52
3,000.00
3-13-52
5,000.00
4- 7-52
6,000.00
4- 7-52
4,000.00
5-19-52
2,000.00
8-15-52
900.00
11- 7-52
5,000.00
2- 3-52
2,000.00
4- 6-53
2,000.00
5-13-53
2,000.00
6- 4-53
3,000.00
7- 4-53
2,500.00
9-11-53
2,000.00
1- 8-54
1,000.00
3-31-54
2,300.00
7-22-54
1,000.00
8-19-54
1,500.00
Total
$50,200.00 These advances were evidenced by 6 per cent demand notes, 18 in number. Petitioners made no further advances to T-M after August 19, 1954. T-M's operations resulted in gross income of $39,000, $57,000, and $73,000, respectively, for the years 1955, 1956, and 1957. T-M sustained net losses of $21,334.92, $17,139.61, and $5,130.84 for the years 1952, 1953, and 1954, respectively. Its net income for 1955 was $790.75. In 1956 its net loss was $898.93 and in 1957 its net income was $1.14. T-M's balance sheet as of December 31, for each of the years 1954 through 1957, was as follows: Assets
1954
1955
1956
1957
Cash
$ 1,712.44
$ 3,219.81
$ 3,194.80
$ 4,355.61
Plant Equipment
2,963.72
2,963.72
2,963.72
2,963.72
Office Equipment
555.25
555.25
555.25
555.25
Building Improvements
5,222.96
5,222.96
5,222.96
5,222.96
Rent Deposit
350.00
350.00
350.00
350.00
Utilities Deposit
97.00
97.00
97.00
97.00
Deficit in Earned Surplus
43,605.37
42,814.62
43,713.55
43,712.41
Total
$54,506.74
$55,223.36
$56,097.28
$57,256.95
Liabilities and Net Worth
R. D. Marshall Loans
$50,200.00
$50,200.00
$50,200.00
$50,200.00
Taxes Payable
157.30
285.75
Reserve for Depreciation
2,049.44
2,923.36
3,797.28
4,671.20
Capital Stock
2,100.00
2,100.00
2,100.00
2,100.00
Total
$54,506.74
$55,223.36
$56,097.28
$57,256.95
*14 No part of petitioners' advances to T-M has been repaid nor has any interest thereon ever been paid to petitioners. T-M filed a petition in bankruptcy in the United States District Court for the Southern District of California on August 24, 1960. Schedule A-3 attached to that petition lists 12 creditors with unsecured claims totaling $4,929.08. Neither of petitioners was among the creditors listed. The petition listed as assets $758.54, consisting entirely of deposits of money in banks and elsewhere. The statement of affairs attached to the petition of bankruptcy of T-M states that the corporation engaged in business from February 2, 1952, to March 31, 1960. This statement also contains the following: That during the year immediately preceding the filing of the original Petition herein, the Petitioner made repayments of loans, as follows: * * * Richard T. Pyles, president of corporation, loaned $2,000.00 cash to corporation January 6, 1959; was repaid final $500.00 on September 30, 1959. During the year immediately preceding the filing of the original Petition herein, the Petitioner transferred or disposed of, other than in the ordinary course of business, the following assets *15 or properties: * * *
In March, 1960, Petitioner sold equipment to W. M. Cissell Manufacturing Co. for $165.00 cash; Surfas, Inc., for $150.00 cash; J. W. Leser Co. for $150.00 cash and Signet Studios for $40.00 cash. All amounts received are included in present assets of bankrupt. In August of 1954, Robert D. Marshall (hereinafter referred to as petitioner) and his business adviser went to the plant of T-M in California and examined the plant and the books of the corporation. They also questioned the corporation's officers about the prospects of the corporation's business. After this visit to T-M's plant, petitioner agreed to lend T-M $1,500 but stated to the officers of T-M that no further loans would be made. The $1,500 advance to T-M was made on August 19, 1954, as hereinbefore shown. While in California petitioners' business adviser talked with a local attorney who handled the affairs of petitioners in connection with T-M about the condition of the corporation and the possibility of suing to collect petitioners' advances to T-M. Petitioners' business adviser later in the year 1954 talked to this attorney by telephone concerning these same matters. The attorney's advice *16 was against suing to collect or forcing the corporation to liquidate or go into bankruptcy. The fixed assets of T-M were of such a nature that then value removed from the premises was substantially less than the amount of the value of these assets as shown on T-M's balance sheet. The advances by petitioners to T-M in the amount of $50,200 did not become totally worthless during the year 1954. Opinion In order to be entitled to a deduction for a nonbusiness bad debt, it must be shown that the debt became totally worthless during the taxable year. Rollins v. Commissioner, 276 F. 2d 368 (C.A. 4, 1960), affirming 32 T.C. 604, and Miriam Coward Pierson, 27 T.C. 330 (1956), affd. on another issue 253 F. 2d 928 (C.A. 3, 1957). The balance sheet of T-M at the end of 1954 shows cash of slightly over $1,700 and fixed assets of approximately $9,000 against which a depreciation reserve of approximately $2,000 is shown. The only liability shown other than petitioners' loans and capital stock is taxes payable of $157.30. This balance sheet indicates that at the end of 1954 T-M's indebtedness to petitioners had not become totally worthless. *17 While T-M's balance sheet at the end of 1954 is evidence of its insolvency, such evidence does not establish the total worthlessness of a debt. Trinco Industries, Inc., 22 T.C. 959 (1954). Petitioners argue that it is obvious that T-M's balance sheet is on a cash basis and that there would exist accounts receivable and accounts payable which are not included in this balance sheet. However, no evidence of the amount of any such accounts receivable or accounts payable is shown in the record and we cannot assume without any proof that the value of accounts receivable would not equal or exceed that of accounts payable. Petitioners also point out that the actual value of T-M's fixed assets was less than the book value thereof if such assets were removed from the premises. This fact is pertinent in considering the amount that petitioners might collect if they attempted to enforce payment of their notes, but it does not establish the total worthlessness of T-M's indebtedness to them. The record shows that T-M continued in business for 6 years after the taxable year here involved and that it had gross income for the 3 years following the taxable year here involved in the amounts *18 of $39,000, $57,000, and $73,000. It also shows that a $2,000 loan to the company by its president was repaid in 1959. Petitioners may have felt that their chance of collecting a higher proportion of T-M's total indebtedness to them was better if they did not attempt to enforce collection in 1954 but this does not establish that the debt became worthless in 1954. Worthlessness is determined by objective standards. Earl V. Perry, 22 T.C. 968 (1954). Petitioners are not entitled to a deduction in 1954 for a nonbusiness bad debt in the amount of their advances to T-M. Respondent, in addition to arguing that petitioners' advances to T-M did not become worthless in the taxable year, contends in the alternative that when the advances were made no chance of recovery existed and argues that no deduction is allowable for this reason. Respondent also suggests, without argument, that the amounts of the advances were not loans but contributions to capital. It is unnecessary to decide these alternative contentions in view of our determination that T-M's indebtedness to petitioner did not become worthless in 1954. Decision will be entered for respondent.