JOHN K. SEXTON and MARJORIE LEE SEXTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sexton v. Commissioner
Docket No. 17024-79.
United States Tax Court
T.C. Memo 1984-360; 1984 Tax Ct. Memo LEXIS 311; 48 T.C.M. (CCH) 512; T.C.M. (RIA) 84360; July 16, 1984. Pollard White, for the petitioners. Robert B. Nadler and John L. Hopkins, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent *312 determined deficiencies in petitioners' Federal income tax for the calendar years 1976 and 1977 in the amounts of $14,823.58 and $1,025.81, respectively. The only issue for decision is whether petitioners are entitled to a nonbusiness bad debt deduction in 1976 under section 166[1] with respect to transfers of funds previously made to relatives. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Hopkinsville, Kentucky, at the time of the filing of the petition in this case, filed a joint Federal income tax return for the calendar year 1976 with the office of the Director, Internal Revenue Services Center, Memphis, Tennessee. In early 1973, John K. Sexton (petitioner) agreed to loan his son, John D. Sexton, a maximum of $45,000 provided the son and the son's wife signed a promissory note. The son planned to use the fund to buy thoroughbred race horses for resale. On February 5, 1973, John D. Sexton and his wife, Bonnie G. Sexton, executed a *313 promissory note in the amount of $45,000 payable on demand to petitioner with interest at the rate of 7 percent per year. Petitioner did not loan any funds to his son and daughter-in-law prior to or immediately following receipt of the promissory note. Petitioner agreed to co-sign loans that his son planned to obtain from various banks up to the amount of $45,000 and in case of a default by his son, he agreed to satisfy the obligations to that extent. On April 25, 1973, petitioners co-signed a $20,000 promissory note of John D. and Bonnie Sexton to the Chesterfield Bank in Chesterfield, Missouri. The note provided for interest at 8 percent per annum. On June 22, 1973, John D. and Bonnie Sexton paid the Chesterfield Bank the amount of $20,000 together with accrued interest in satisfaction of their indebtedness to the bank. On June 26, 1973, John D. and Bonnie Sexton borrowed $30,000 from the Chesterfield Bank and petitioner co-signed the note. The amount of $30,800 (including a finance charge of $800) was payable to the Chesterfield Bank on October 26, 1973. On November 8, 1973, John D. Sexton paid the Chesterfield Bank only the interest of $800 due on the $30,000 loan. By *314 letter dated November 8, 1973, the bank informed John D. Sexton that the $800 interest payment did not cover the total interest due on the loan because additional interest had accrued on the $30,000 since the due date of October 26, 1973. By letter dated November 23, 1973, the Chesterfield Bank informed John D. Sexton that the $30,000 loan remained unpaid and requested him to contact the bank to make arrangements to pay the loan. The bank sent a copy of this letter to petitioner. On December 21, 1973, John D. Sexton telephoned his father from California and asked to borrow an additional $10,000 for a short period of time. That day, petitioner sent his son a check for $10,000. John D. Sexton sent his father a check for $10,000 dated December 26, 1973, drawn on a bank in Kansas, but payment of the check was refused by the bank on which it was drawn because of insufficient funds. In early 1974, shortly after the check was not honored, petitioner gave John D. Sexton a check for $3,500 and cash in the amount of $1,500. Early in January 1974, the president of the Chesterfield Bank called petitioner to request payment of the $30,000 note petitioner had co-signed with his son. On *315 January 7, 1974, petitioner paid the Chesterfield Bank the amount of $30,486.67 in satisfaction of his son's $30,000 indebtedness plus interest due to the bank. In 1975, John D. Sexton was employed for approximately one year by W. Jeff Hammond Moving and Storage, Inc. (Hammond Moving), which was owned by Larry Larimore, John D. Sexton's father-in-law. In 1975, petitioner purchased the Henderson-Moorefield Lumber Co., Inc. (Henderson-Moorefield), in Hopkinsville, Kentucky, and began to employ his son in the business in July 1976. John D. Sexton's wage and tax statement (Form W-2) from Henderson-Moorefield states that he earned $5,516.87 in 1976. In 1976, John D. Sexton's wife, Bonnie Sexton, was also employed by Henderson-Moorefield, petitioner's company. During 1976, she earned $11,202.37 from her father-in-law's company according to her Form W-2. During 1976, Bonnie Sexton was also employed by Hammond Moving, her father's business. According to her Form W-2 from Hammond Moving, she earned $1,400 in 1976. On their 1976 Federal income tax return, John D. and Bonnie Sexton reported a total of $18,132.44 in wage income. In addition, on this return they reported income of $11,480.15 *316 as dividends received from Hammond Moving, the company owned by Bonnie Sexton's father. They also reported interest income of $127.89. In 1976, John D. and Bonnie Sexton sold their home for $28,000 and purchased a new home for $48,200.19. They obtained a bank mortgage of $47,000 to finance the purchase of the new residence. In 1976, John D. and Bonnie Sexton had no children and suffered from no physical disabilities. Bonnie Sexton had a baccalaureate degree in interior decorating. John D. Sexton was 31 years old in 1976 and needed only 3 hours to qualify for his baccalaureate degree in agriculture at the University of Missouri, Columbia, Missouri. On June 10, 1974, petitioner's brother-in-law, F. Donald Clarkson, and his wife, Eileen K. Clarkson, executed a promissory note in the amount of $4,500 at 7 percent interest per year payable to petitioner. Mr. Clarkson, a professional golfer, operated a sporting goods store and borrowed the $4,500 from petitioner to pay sales tax owed to the Internal Revenue Service. In 1976, Mr. Clarkson, who was in his early 50's, was employed as a golf professional at the Old Warson Country Club, St. Louis, Missouri, and worked in his sporting *317 goods store in the evenings. Mrs. Clarkson worked in her husband's sporting goods store during the day. Both Mr. and Mrs. Clarkson had graduated from high school and neither of them suffered from physical disabilities. At no time did petitioners initiate judicial proceedings against, or file liens against, or serve written demand for repayment of the money lent to John D. and Bonnie Sexton and F. Donald and Eileen K. Clarkson. Petitioner never sought the advice of an attorney or an accountant with respect to collection of the amounts loaned to his son and brother-in-law. He did not engage the services of a collection agency to collect the debts. Neither petitioner's son nor his brother-in-law have been declared bankrupt. Petitioners, on their Federal income tax return for 1976, claimed a nonbusiness bad debt deduction of $49,500. This amount was arrived at by adding the $45,000 amount of the promissory note signed by petitioner's son and daughter-in-law in 1973 to the $4,500 amount of the promissory note signed by petitioner's brother-in-law and sister-in-law in 1974. Respondent disallowed petitioners' claimed deduction with the explanation that "nonbusiness bad debts in *318 the amount of $49,500 shown on your 1976 return are not allowable pursuant to Section 166 of the Internal Revenue Code."[2]
OPINION Section 166(d)[3] provides that where a nonbusiness bad debt becomes worthless within a taxable year, the loss therefrom to a taxpayer other than a corporation shall be considered as a short-term capital loss. To qualify for a deduction for worthless nonbusiness debts under section 166(d)(1), a taxpayer must show that he and the alleged debtor intended *319 to create a debtor-creditor relationship, that a genuine debt in fact existed, and that the debt became worthless within the taxable year in which the deduction is claimed. Section 1-166-1(c), Income Tax Regs.[4]Andrew v. Commissioner,54 T.C. 239, 245 (1970). *320 While the parties agree that petitioner had bona fide nonbusiness debts in the amount of approximately $44,500, respondent takes the position that neither the amount owed to petitioner by his son nor the amount owed to him by his brother-in-law became worthless in 1976. To qualify for deductions for nonbusiness worthless debts under section 166(d)(1), a taxpayer must show that the debt has become totally worthless. No deduction is "allowed for a nonbusiness debt which is recoverable in part during the taxable year." Section 1.166-5(a)(2), Income Tax Regs.[5]
*321 In this case, petitioner has failed to prove that either the $40,000 nonbusiness debt of his son or the $4,500 nonbusiness debt of his brother-in-law became totally worthless in 1976. Whether or not a debt has become worthless is a question of fact which depends primarily upon the reasonable probability of the debt's ultimate collection. The Court must look at the financial condition of the debtor when determining the worthlessness of the debt. Section 1.166-2(a), Income Tax Regs.[6] A showing that the debt is worthless and uncollectible and that legal action to enforce payment would probably not result in the satisfaction of execution on a judgment is sufficient evidence of the worthlessness of the debt. Section 1.166-2(a), Income Tax Regs.
*322 We find that neither of petitioner's bona fide nonbusiness debts in the total amount of approximately $44,500 became totally worthless in 1976. The evidence shows that at least a portion of these debts was recoverable in 1976. Whether a debt has become worthless within a particular year is a question of fact, Perry v. Commissioner, 22 T.C.. 968, 973 (1954), to be determined on the basis of objective factors, not on the taxpayer's subjective judgment as to the worthlessness of the debt. Fox v. Commissioner,50 T.C. 813, 823 (1968), affd. in an unreported opinion (9th Cir. 1970, 25 AFTR 2d 70-891, 70-1 USPC par. 9373). Determining whether a debt has become worthless is not accomplished by a stereotyped legal test, but requires an examination of all circumstances. Dallmeyer v. Commissioner,14 T.C. 1282, 1291 (1950). After an examination of the facts in this case, we conclude that petitioner had a significant hope for the recovery of at least a portion of the amounts loaned to his son and could have recovered some or all of the amounts loaned to his brother-in-law. Petitioner must establish total worthlessness in *323 connection with each loan in order to sustain the bad debt deduction. Petitioner argues that the $40,486.67 he lent his son was worthless in 1976 and points to the financial difficulties experienced by John D. and Bonnie Sexton from 1973 through 1982 to support his position. This Court is concerned solely with the financial standing of the debtors in 1976 when the bad debt deduction was claimed by petitioner. As stated by this Court in Pierson v. Commissioner,27 T.C. 330, 338 (1956), affd. 253 F.2d 928 (3d Cir. 1958), "a nonbusiness bad debt is not deductible unless it becomes totally worthless within the taxable year." The regulations also require that in order to obtain a bad debt deduction a taxpayer must show that a nonbusiness debt became wholly worthless within the taxable year in which the deduction is claimed. Section 1.166-5(a)(2), Income Tax Regs. The fact that the debts involved in this case might have become worthless after 1976 is not relevant for our purposes. See Redman v. Commissioner,155 F.2d 319 (1st Cir. 1946), affirming a Memorandum Opinion of this Court. Thus, we will confine our consideration of the debtors' *324 financial conditions to the year 1976. In determining whether a debt is worthless, this Court has considered such factors as the debtor's age, health, earning capacity, educational status, and income. [7] Mere proof of a debtor's financial difficulties will not sustain a bad debt deduction. [8]
In 1976, John D. and Bonnie G. Sexton were solvent and both were employed. John D. Sexton and his wife both worked for petitioner's lumber company. He earned $5,516.87 from his father's company from July through December 1976. She earned $11,202.37 from her father-in-law's company in 1976. Petitioner made no attempt in 1976 or any other year to collect any of the indebtedness from his son and daughter-in-law out of wages they earned from his lumber business. Bonnie Sexton also worked in 1976 in her father's moving and storage business and earned $1,400. On their Federal income tax return for 1976, John D. *325 and Bonnie Sexton reported a total of $18,132.44 in wage income. In addition, they reported dividend income of $11,480.15 and interest income of $127.89 in 1976. Their adjusted gross income for 1976 was $25,670.13. From this evidence, it appears that they could have sent petitioner some money that year to satisfy at least a portion of the indebtedness. Petitioners argue that John and Bonnie Sextion did not receive dividends in the amount of $11,480.15 in 1976 from Hammond Moving, the company owned by Bonnie Sexton's father. On their 1976 Federal income tax return, however, John D. and Bonnie Sexton reported the $11,480.15 dividend as income. Although petitioner contends that his son and daughter-in-law did not receive the dividend, an amended return was not filed in order to exclude the dividend from their 1976 income tax return. We are not persuaded by petitioners' argument that John D. and Bonnie Sexton failed to receive the dividend in the amount of $11,480.15. There is no evidence in the record concerning this dividend other than the fact that it was reported on John D. and Bonnie Sexton's 1976 tax return. [9] This record indicates that the $11,480.15 dividend should be *326 included. However, there is sufficient evidence in this record to show that some payment could have made to petitioner from their other funds. In 1976, John D. and Bonnie Sexton had no children and suffered from no physical disabilities that would have presented them with extraordinary expenses. John D. Sexton was 31 years old in 1976. In 1976, John D. and Bonnie Sexton sold their residence for $28,800 and bought a new home for $48,200.19. John D. and Bonnie Sexton Obtained a $47,000 mortgage loan from the bank and were the only signers of the mortgage note. The fact that the bank extended credit in the amount of $47,000 to the debtors in 1976 indicates that petitioner's conclusion that the loans to his son were totally worthless in that year is invalid. Although a bona fide debtor-creditor relationship existed between petitioner and his brother-in-law, F. Donald Clarkson, in 1976, the record does not reveal any facts to support petitioner's conclusion that *327 the $4,500 loan to the Clarksons was uncollectible in that year. In 1976, Mr. Clarkson was employed as a golf professional at a country club and he and his wife both worked in their sporting goods store. He worked in the evenings, while she worked during the day. The record shows that in 1978 or 1979 the Clarksons experienced some financial difficulties. However, there is no showing of any such problems in 1976. In 1976, the Clarksons suffered from no physical difficulties that would present extraordinary expenses or would prevent them from being employed. In 1976, the Clarksons were not bankrupt and petitioner made no attempt to collect from the Clarksons the money owed to him. We find that petitioner has failed to sustain his burden of proving that the nonbusiness debts became totally worthless in 1976. Petitioner made no effort to collect the amounts loaned to his relatives even though it is apparent from this record that at least some of the money could have been recovered in 1976. As this Court stated in Fox v. Commissioner,supra at 822, the "Mere belief that a debt is bad is insufficient to support a deduction for worthlessness." It is incumbent *328 upon petitioner to show objective facts which illustrate the worthlessness of the debt in 1976. Fox v. Commissioner,supra at 822-823. We hold that petitioners have failed to sustain their 1976 claimed nonbusiness bad debt deductions. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Petitioners, in their brief, state that they contend that the $40,486.67 which petitioner loaned to his son by paying his son's note plus interest and advancing him $10,000 in cash became worthless in 1976 as did the $4,500 loan to petitioner's brother-in-law. Respondent does not contend that the $40,486.67 and the $4,500 were not loans, but contends that petitioner has not shown that the amounts became worthless in 1976. Respondent took the position that the $5,000 given by petitioner to his won in early 1974 was not a loan and we conclude from petitioners' brief that they now concede that this $5,000 was not a loan to petitioner's son. Petitioner in effect so testified.↩
3. Sec. 166(d) provides as follows: (d) Nonbusiness Debts.-- (1) General rule.--In the case of a taxpayer other than a corporation-- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worth-less within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩
4. Sec. 1.166-1(c), Income Tax Regs., provides in pertinent part: (c) Bona fide Debt required. Only a bona fide debt qualifies for purposes of section 166↩. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money.
5. Sec. 1.166-5(a)(2), Income Tax Regs., provides: (2) If, in the case of a taxpayer other than a corporation, a nonbusiness debt becomes wholly worthless within the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year (6 months for taxable years beginning before 1977; 9 months for taxable years beginning in 1977). Such a loss is subject to the limitations provided in section 1211, relating to the limitation on capital losses, and section 1212, relating to the capital loss carryover, and in the regulations under those sections. A loss on a nonbusiness debt shall be treated as sustained only if and when the debt has become totally worthless, and no deduction shall be allowed for a nonbusiness debt which is recoverable in part during the taxable year.↩
6. Sec. 1.166-2(a), Income Tax Regs., provides: (a) General rule. In determining whether a debt is worthless in whole or in part the district director will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. (b) Legal action not required. Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for purposes of the deduction under section 166↩.
7. See Yara Engineering Corp. v. Commissioner,T.C. Memo. 1963-283, affd. per curiam 344 F.2d 113↩ (3d Cir. 1965). 8. See Clemens v. Commissioner,T.C. Memo. 1969-235, affd. per curiam 453 F.2d 869↩ (9th Cir. 1971).
9. There is some testimony with respect to a dividend reported on John D. and Bonnie Sexton's 1977 Federal income tax return. We do not consider this testimony relevant to the dividend reported on their 1976 return.↩