T.C. Summary Opinion 2012-44

UNITED STATES TAX COURT

GEORGE SAADIAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14369-10S.                    Filed May 10, 2012.

<u>William M. Samoska</u>, for petitioner.

<u>Michael E. Washburn</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463.[1]  Pursuant to section 7463(b), the decision to be

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant period.  Rule references are to the Tax Court Rules of Practice and Procedure.

entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated March 29, 2010 (notice), respondent determined a $30,000 deficiency in and a $6,000 section 6662(a) accuracy-related penalty with respect to petitioner's 2006 Federal income tax. Respondent now agrees that petitioner is not liable for the accuracy-related penalty. The issue for decision is whether petitioner is entitled to the $200,000 nonbusiness bad debt deduction claimed on his 2006 Federal income tax return (return).

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in California.

Petitioner and Nedjat Simantob (Mr. Simantob), both members of what petitioner describes as the "Persian Jewish" community (community) are related in a manner described by petitioner as "distant relatives". At some point in 1987, Mr. Simantob, who at the time owned and operated several businesses, including a real estate development company, approached petitioner and petitioner's mother, Parvindokht Toufer Saadian (Mrs. Toufer), for a loan. The proceeds of the loan were intended to be used in connection with a real estate development project being considered by Mr. Simantob; apparently he was not able to secure commercial

financing for the project. According to petitioner, Mr. Simantob enjoyed a very good reputation within the community as an honest and successful businessman.

Relying heavily on Mr. Simantob's reputation within the community, petitioner and his mother agreed to jointly lend $200,000 to Mr. Simantob (loan). Nothing in the record suggests that petitioner or Mrs. Toufer was in the trade or business of lending money during the year in issue. The loan is evidenced by a promissory note dated January 3, 1988, payable to petitioner and Mrs. Toufer. The note shows an annual interest rate of 8%, payable monthly, with the principal due on or before January 2, 2000.

As it turned out, things did not go as planned. Mr. Simantob did not begin to make monthly payments as required under the promissory note until some point in 1990. From 1990 through 2000 Mr. Simantob made partial interest payments that ranged from $1,750 to $8,000 per year. Petitioner contacted Mr. Simantob for the first time around March 1988 and then several times between 1988 and 2004 to inquire as to why the interest payments were not being made as required by the terms of the note.

The record is unclear as to whether Mr. Simantob made any payments during 2001 and 2002. Mr. Simantob made a $4,100 interest payment to Mrs. Toufer in 2003, which was the last payment made on the promissory note.

By letter dated April 6, 2004, petitioner's attorney, William M. Samoska, demanded payment from Mr. Simantob by April 12, 2004, of the principal and interest due on the note. The letter includes the following statement: "If this sum is not received, then we will follow our clients' instructions and immediately take legal action." Mr. Simantob did not pay; nonetheless, neither petitioner nor Mrs. Toufer pursued any legal action in an attempt to collect the balance of the loan.[2] According to petitioner, the decision not to sue Mr. Simantob was made because of concern over the negative social implications that might arise if one member of the community sued another member in order to recover a debt.

Mr. Simantob died in December 2004. After Mr. Simantob's death, petitioner met on several occasions with Mr. Simantob's sons, both of whom were involved in Mr. Simantob's businesses. At the time, one of Mr. Simantob's sons was a plaintiff in a lawsuit to recover money owed to him by other members of the community. The plan was to use any recovery from that lawsuit to satisfy Mr.

---

[2]The reference to "clients" in Mr. Samoska's April 6, 2004, letter to Mr. Simantob obviously is to petitioner and Mrs. Toufer even though petitioner claims that Mrs. Toufer had made a gift of her interest in the note to him earlier that year.

Simantob's debt to petitioner. Apparently, that plan did not go so well either. In his last meeting with one or both of Mr. Simantob's sons, which took place in 2006, petitioner was advised that he should not plan to receive the unpaid balance due on the note. That plan went as expected; no further payments were received.

Petitioner's return includes a Schedule D, Capital Gains and Losses. That schedule shows a long-term capital gain of $1,335,943, offset by a $200,000 nonbusiness bad debt deduction related to the loan. The disallowance of that deduction in the notice results in a dollar-for-dollar increase in petitioner's long-term capital gain, which in turn, results in the deficiency here in dispute. According to the notice, petitioner failed to establish that the debt was worthless or otherwise qualified as a bad debt.

Discussion

As has been observed by this and other Federal courts in opinions too numerous to count, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof regarding the taxpayer's entitlement to any deductions claimed.[3] Rule 142(a); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84

---

[3]Petitioner does not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

(1992); <u>Deputy v. du Pont</u>, 308 U.S. 488, 493 (1940); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

According to petitioner, the deduction here in dispute is attributable to a worthless, nonbusiness bad debt, deductible pursuant to section 166(d). That section provides that a deduction shall be allowed for any bad debt that becomes worthless within the taxable year. The term "nonbusiness debt" is defined as a debt other than a debt created or acquired in connection with the taxpayer's trade or business or a loss from the worthlessness of a debt that is incurred in the taxpayer's trade or business. <u>See</u> sec. 166(d)(2). The loss from a nonbusiness bad debt that becomes wholly worthless within the year is treated as a loss arising from the sale or exchange of a capital asset held for less than one year and is deductible subject to certain limitations. <u>See</u> sec. 166(d)(1); sec. 1.166-5(a)(2), Income Tax Regs.

The allowance of a deduction under section 166 requires that the debt to which the deduction relates was a valid debt and that the taxpayer claiming the deduction was the creditor.[4] Respondent does not necessarily agree that petitioner

---

[4]The record is less than clear with respect to whether petitioner or Mrs. Toufer provided the funds for the loan, or if both did, how much either contributed. The record shows that interest payments were being made to Mrs. Toufer.

has satisfied either requirement here, but assuming without finding that both requirements have been satisfied, we turn our attention to petitioner's claim that the debt became worthless during 2006.

There is no standard test for determining worthlessness; whether and when a debt becomes worthless depends on all the facts and circumstances. See Crown v. Commissioner, 77 T.C. 582, 598 (1981). In general, the year of worthlessness must be fixed by identifiable events that constitute reasonable grounds for a creditor to abandon any prospect of recovery. Id. The creditor's decision must be made in the exercise of sound business judgment, using information that is as complete as is reasonably obtainable. See Andrew v. Commissioner, 54 T.C. 239, 248 (1970). However, a debt is not worthless for purposes of a section 166 deduction merely because it might be difficult, or uncomfortable, to collect. See Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 757 (1998).

Petitioner's decision not to enforce collection of the debt for personal rather than financial reasons, in and of itself, operates to deny him the deduction here in dispute. Furthermore, we question the timing of the deduction. The note matured in 2000, six years before the year in which petitioner claims the debt to have become worthless. Although there is evidence that petitioner pursued collection of the debt with Mr. Simantob's heirs after the death of Mr. Simantob, there is no showing that

any formal claim against Mr. Simantob's estate was made or that Mr. Simantob's sons had any legal obligation to satisfy the debt. If the debt became worthless, it would seem that it did so before the year in issue. See Pierson v. Commissioner, 27 T.C. 330, 338 (1956), aff'd, 253 F.2d 928 (3d Cir. 1958). Accordingly, petitioner is not entitled to a $200,000 nonbusiness bad debt deduction for 2006, and respondent's determination to that effect is sustained.

To reflect the foregoing,

Decision will be entered

for respondent.