## MAGUIRE ET UX. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 346.   Argued March 5, 6, 1941.—Decided March 31, 1941.

1

*Mr. Francis E. Baldwin,* with whom *Mr. Albert H. Veeder* was on the brief, for petitioners.

*Miss Helen R. Carloss* argued the cause, and *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Norman D. Keller, Thomas E. Harris,* and *Arthur A. Armstrong* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The taxpayer's[1] share of a testamentary trust, established pursuant to the will of her father, was delivered to her in kind in 1923. The property was personalty, part of which had been owned by the decedent and part purchased by the trustees. The decedent died in 1903 and his executors were discharged by the probate court in 1905. Pursuant to that order the executors turned over to themselves, as trustees, all of the residue of the estate.[2] From that residue the taxpayer's claim to the property in question derived. During the year 1930

---

[1] Petitioners are husband and wife who filed a joint return. The income here involved is that of the wife.

[2] The will directed the executors and trustees, not less than ten and not more than twenty years after the death of the testator, to make final distribution of this residue as follows: ". . . to my wife the one-third part thereof, the balance to be equally divided among my children, share and share alike, and should my wife not be living at the time of such distribution, then the same shall be divided equally among my children, share and share alike, the descendants of any deceased children in such distribution to take the proportion of their deceased parent, . . ."

parts of both groups of property were sold.[3] The questions presented relate to the proper basis under the Revenue Act of 1928 (45 Stat. 791) for determining gain or loss upon those sales: (1) whether the basis in case of the personalty owned by decedent is its value when received by the trustees from the executors or its value at the date of delivery by the trustees to the taxpayer; and (2) whether the basis in case of the personalty purchased by the trustees is its cost to the trustees or its value at the date of delivery by the trustees to the taxpayer. The case is here on a petition for certiorari which we granted because of a conflict among the circuits on those two questions.[4]

I. As respects the property owned by the decedent at his death, we are of the view that the date when it was received by the trustees from the executors, rather than the date when it was delivered by the trustees to the taxpayer, governs. In the case of general bequests, § 113 (a) (5) of the Revenue Act of 1928 provided that "the basis shall be the fair market value of the property at the time of the distribution to the taxpayer."[5] But

---

[3] The sales were made by trustees of new *inter vivos* trusts under which the property had been placed on its delivery in 1923. It was stipulated that the beneficiaries (including the taxpayer) were taxable as though the sales were made by them individually.

[4] The opinion of the court below is reported at 111 F. 2d 843. On the first question it held that the basis was the value at the time the property was received by the trustees from the executors; on the second, that the basis was cost to the trustees. On those two questions that decision is in conflict with *Commissioner* v. *Gambrill*, 112 F. 2d 530, from the Second Circuit Court of Appeals. And see *Commissioner* v. *Libbey*, 100 F. 2d 458.

[5] Sec. 113 (a) (5) provided: "(a) Property acquired after February 28, 1913.—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that . . . (5) Property

4

in case of specific bequests of personality or in case of realty, the basis was the fair market value of the property at the death of the decedent. § 113 (a) (5). In the latter cases the property either vested in the heir or devisee at death or was rather definitely marked at the time of death for the legatee. In the former the legatee normally must have awaited administration of the estate before the property bequeathed to him could have been identified with certainty. That difference suggests the distinction in treatment under § 113 (a)(5) of general bequests of personality. It emphasizes that the words "at the time of the distribution to the taxpayer" meant the time when the distribution was made out of the estate. It supports the view that Congress focused

transmitted at death.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death;"

Sec. 113 (b) provided: "(b) Property acquired before March 1, 1913.—The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be: (1) the cost of such property (or, in the case of such property as is described in subsection (a) . . . (5) . . . of this section, the basis as therein provided), or (2) the fair market value of such property as of March 1, 1913, whichever is greater."

§ 113 (a) (5) on the decedent's death and the administration of his estate, and not on subsequent transfers or transmissions of the property.

The legislative history of § 113 (a) (5) lends support to that conclusion. Prior to the 1928 Act the basis for property obtained by bequest, devise, or inheritance was the fair market value "at the time of such acquisition." [6] The House Bill [7] which became the Revenue Act of 1928 provided that the basis for all property acquired by bequest, devise, or inheritance should be the fair market value of the property at the date of the decedent's death—a provision designed to clarify [8] the meaning of "acquisition" in the earlier acts.[9] In the Senate that

---

[6] Revenue Act of 1921 (42 Stat. 227) § 202 (a); Revenue Act of 1924 (43 Stat. 253) § 204 (a); Revenue Act of 1926 (44 Stat. 9) § 204 (a).

[7] H. R. 1, 70th Cong., 1st Sess.

[8] H. Rep. No. 2, 70th Cong., 1st Sess., Int. Rev. Bull., Cum. Bull. 1939–1, Pt. 2, p. 396. And see Report of the Joint Committee on Internal Revenue Taxation, H. Doc. No. 139, 70th Cong., 1st Sess., pp. 17–18.

[9] Much of that confusion was later eliminated by *Brewster* v. *Gage*, 280 U. S. 327, holding that in case of a residuary legatee of personal property the time of "acquisition" was the date of decedent's death, not the date of distribution of the property by the executors to the legatee. That decision was rendered in 1930 under the 1918 and 1921 Acts. The wording of § 113 (a) (5) contained in the 1928 Act was continued in the 1932 Act (47 Stat. 169, 199). But under the 1934 Act (48 Stat. 680, 706) there was a return to the language of the 1926 Act, the Senate Report stating: "Section 113 (a) 5 of the Revenue Act of 1932 is a reënactment of a similar provision contained in the 1928 Act. The change in the 1928 Act was made because there was some doubt as to the meaning of the term 'date of acquisition,' which was the term used under the Revenue Act of 1926. Since the 1928 Act was passed, the Supreme Court has defined 'the date of acquisition' to mean the date of death in the case of all property passing by bequest, devise, and inheritance, whether real or personal. (*Brewster* v. *Gage*, 280 U. S. 327.) Section

language of § 113 (a) (5) was changed to the form in which it appeared in the Revenue Act of 1928—a change specifically designed to avoid the confusion as to the basis on which gain or loss on the sale of property purchased by the executor and distributed to beneficiaries was to be determined.[10]

---

113 (a) 5 of the House bill conforms to the language contained in the Revenue Act of 1926, so that a uniform basis rule may be required in the case of property passing at death, whether real or personal." S. Rep. No. 558, 73d Cong., 2d Sess., Int. Rev. Bull., *supra* note 8, pp. 612–613.

[10] S. Rep. No. 960, 70th Cong., 1st Sess., Int. Rev. Bull., *supra* note 8, p. 409, where it was said (p. 427): "It appears that the House bill is inadequate to take care of a number of situations which frequently arise. For example, the executor, pursuant to the terms of the will, may purchase property and distribute it to the beneficiaries, in which case it is impossible to use the value at the decedent's death as the basis for determining subsequent gain or loss, for the decedent never owned the property. Moreover, the fair market value of the property at the decedent's death can not properly be used as the basis, in case of property transferred in contemplation of death where the donee sells the property while the donor is living.

"Accordingly, the committee has revised section 113 (a) 5 and certain related sections, so as to provide that in the case of a specific bequest of personalty or a general or specific devise of realty, or the transmission of realty by intestacy, the basis shall be the fair market value at the time of the death of the decedent. In these cases it may be said, as a matter of substance, that the property for all practical purposes vests in the beneficiary immediately upon the decedent's death, and therefore the value at the date of death is a proper basis for the determination of gain or loss to the beneficiary. The same rule is applied to real and personal property transmitted by the decedent, where the sale is made by the executor. In all other cases the basis is the fair market value of the property at the time of the distribution to the taxpayer. The latter rule would obtain, for example, in the case of personal property not transmitted to the beneficiary by specific bequest, but by general bequest or by intestacy. It would also apply in cases where the executor purchases property and distributes it to the beneficiary."

There does not appear to be the slightest suggestion that this change was designed as a substantial departure from the value-at-death rule. To be sure, it did produce a limited deviation from that principle in that no income tax effect was to be given changes in value of personal property, passing otherwise than by specific bequest, during the administration of the estate. But to hold that it effected the change which petitioner urges would be to impute to Congress a purpose to go far beyond the exigencies of the specific situations with which it was dealing.

The language used does not require that result. "Distribution to the taxpayer" is not necessarily restricted to situations where property is delivered to the taxpayer. It also aptly describes the case where property is delivered by the executors to trustees in trust for the taxpayer. Such distribution of the estate results in the acquisition by the taxpayer of an equitable estate under the testamentary trust. The fact that he does not then obtain possession or control, the fact that his interest is conditional or contingent, the fact that legal title may not be transferred to him until years later, are immaterial. Sec. 113(a) (5) merely provided a point of reference and a standard of value for determination of gains or losses realized on subsequent sales of property acquired by bequest, devise, or inheritance. In *Brewster* v. *Gage,* 280 U. S. 327, 334, this Court held under earlier acts [11] that the date of death was the date of "acquisition" even in case of a residuary legatee whose interest at the date of death clearly was not absolute. That conclusion suggests that the critical date is the time when the legatee acquires some interest in the property although his interest then may not be unconditional. Hence, in case of remainders governed by § 113 (a) (5) of the 1928 Act, it

---

[11] See note 9, *supra.*

cannot realistically be asserted that the date when the remainderman acquired his interest came later than the time when he obtained an equitable estate under the testamentary trust.

There are other reasons why we cannot infer that Congress intended to make more than a limited departure from the value-at-death principle in enacting § 113 (a) (5) of the 1928 Act. As respondent points out, there would be a substantial disparity between the treatment of remaindermen of realty and remaindermen of personality under the same testamentary trust, if the latter were given a basis of value at the time of distribution by the trust. Furthermore, we cannot on the basis of the legislative history of § 113 (a) (5) impute to Congress a purpose to allow trustees either to sell the property or to distribute it in kind, as would be most advantageous for tax purposes. The creation of such an opportunity for manipulation of tax liability cannot be lightly presumed. Similarly we cannot assume in absence of explicit provisions that Congress intended to create substantial periods of time following the date of death during which the value of the property bequeathed would have no incidence as respects subsequent gains or losses. Respect for the obvious symmetry of this statutory scheme induces the conclusion that there was a "distribution to the taxpayer" when this property was delivered by the executors to the trustees.[12]

II. As respects the property which was purchased by the trustees, we are of the view that its cost to them, rather than its value at the date of delivery to the tax-

---

[12] We are not aided by administrative construction. The Bureau of Internal Revenue originally took the view which we have reached. G. C. M. 6195, VIII—1 Cum. Bull. 99 (1929). This view was reversed in G. C. M. 11309, XII—1 Cum. Bull. 126 (1933). Its original view was again taken in G. C. M. 14893, XIV—1 Cum. Bull. 202 (1935).

payer, governs. Sec. 113 (a) provided that the basis in case of property acquired after February 28, 1913, should be "the cost of such property." [13] That standard controls here unless these transactions are governed by the provision of § 113 (a) (5) that, "In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer." The latter provision is applicable if the property in question was "acquired . . . by will." We think it was not.

The title of § 113 (a) (5) is "Property transmitted at death." While the title of an act will not limit the plain meaning of the text (*Caminetti* v. *United States,* 242 U. S. 470, 490; *Strathearn S. S. Co.* v. *Dillon,* 252 U. S. 348, 354), it may be of aid in resolving an ambiguity. *Knowlton* v. *Moore,* 178 U. S. 41, 65. It suggests, as does the legislative history which we have related, that the foregoing provision of § 113 (a) (5) was confined, with minor exceptions, to the specific property owned by the decedent at his death. To be sure, the taxpayer's right in the property in question had its source in the provisions of the will. But there is no indication that Congress in drafting § 113 (a) (5) looked beyond the distribution of the estate by the executors. In that connection, the Senate Report specifically stated that the foregoing provision of § 113 (a) (5) governed purchases by the executors.[14] No reference was made to purchases by testamentary trustees. The inference is strong that Congress was fashioning § 113 (a) (5) on the theory that for income tax purposes acquisition of personal property passing by general bequest or intestacy did not occur until distribution of the estate was made. In that pos-

---

[13] See note 5, *supra.* And see § 113 (b), *supra* note 5, as respects the basis in case of property acquired before March 1, 1913.

[14] S. Rep. No. 960, *supra* note 10.

ture of the problem, property purchased by the executor (acting, so to speak, in the decedent's stead) prior to that distribution was acquired by the distributee "by will." But once the administration of the estate had been completed and the basic testamentary disposition effected, subsequent purchases were to be governed by cost as provided in § 113 (a). Property so purchased would not be part of the original inheritance. Certainly if the trustees themselves had sold the property, the transaction would have been taxable on the cost basis. To hold that a different basis applies in case the beneficiary made the sale would be to open an avenue for tax avoidance. Furthermore, we are dealing here with a statutory scheme which in general recognizes value at the date of death in computing subsequent gains or losses. We are not inclined in absence of clear and unambiguous language to imply a greater deviation from that principle than that which is necessitated by the declared objective of Congress.

*Affirmed.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS are of opinion that the judgment should be reversed for the reasons stated in the opinion of the Circuit Court of Appeals for the Second Circuit in *Commissioner* v. *Gambrill*, 112 F. 2d 530.