**A. H. MORSE CO.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 4759.

United States Court of Appeals
First Circuit.

Dec. 28, 1953.

E. Russell Greenhood, Boston, Mass., for petitioner.

Robert B. Ross, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., on brief), for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition brought under 26 U.S.C. §§ 1141, 1142, for review of a decision of the Tax Court of the United States entered on January 27, 1953, determining deficiencies in the petitioner's federal income taxes for the fiscal years ended June 30, 1947 and June 30, 1948, in the respective amounts of $20,005.40 and $13,292.23. The petitioner has waived its right to review all the issues involved in the Tax Court decision except the issue of the proper legal basis for depreciation of twelve written exclusive sales franchises owned by it. Petitioner contends that the Tax Court erred in holding that it was only entitled to use the cost of the sales franchises to its transferor as the basis for depreciation of the franchises under the provisions of Section 113(a) (8) of the Internal Revenue Code, 26 U.S.C. § 113(a) (8).

From an agreed stipulation of facts, documents and oral testimony, the Tax Court found the following uncontested facts. Petitioner, a Massachusetts corporation with its principal office in Boston, Massachusetts, is engaged in the food brokerage business. It represents canners and processors of food in New England and sells their products to wholesalers and chain stores on a commission basis. The petitioner filed its income tax returns with the Collector of Internal Revenue for the District of Massachusetts. Its returns were filed on an accrual basis with its fiscal year ending June 30.

Albert H. Morse died on September 11, 1945. For approximately fifty years prior to his death he was the sole proprietor of a food brokerage business operated under the name of A. H. Morse & Co. At the time of his death Morse owned twenty-seven franchises granting to him and his company the exclusive right to sell for commission in the New England area the food products of twenty-seven canners and processors to approximately four hundred, wholesalers, distributors and chain stores. With three or four exceptions, these franchises were oral and all of them were revocable by either party upon notice. For federal estate tax purposes the net value of tangible assets less liabilities of the business of Albert H. Morse was valued at the time of his death at $59,451.25. In his will Morse gave "the good will of the business" and the "right to continue the use of my name in said business" to George T. Neilson, who had been Morse's employee for twenty-five years and his general manager for ten years prior to Morse's death. Morse's will also directed Neilson to continue the business until the end of the current fiscal year in which Morse's death should occur. Further provisions in the will granted Neilson an option to purchase the tangible assets of the business upon paying to the executors of Morse's es-

tate a sum determined by the books of the business at the end of said fiscal year.

Neilson operated the business of A. H. Morse & Co. from September 11, 1945 to June 30, 1946, the end of the fiscal year of the company following Morse's death. On July 1, 1946, Neilson exercised the option by executing a promissory note payable to the executors of Morse's estate. From June 11 to June 19, 1946, Neilson obtained written franchises from twelve canners and processors granting him or a corporation he planned to organize, the right to be their exclusive sales representative in the New England area. Eleven of the franchises contained the following typical provision: "This agreement shall continue in full force and effect for ten years, except that if the second party fails to furnish representation and procure sales satisfactory to the first party, the first party may cancel this agreement after first giving 90 days' notice in writing of such dissatisfaction and intention to cancel." The twelfth franchise was limited to a five-year period and contained a provision that it might be cancelled by either party upon giving ten days' written notice. Neilson also obtained from fifteen other canners and processors oral franchises revocable by either party upon notice. The written and oral franchises were with the same twenty-seven concerns that formerly had A. H. Morse & Co. as their exclusive sales representative. The only cost of the franchises to Neilson was the payment of $5,000 for legal services rendered in connection with them.

On July 1, 1946, the petitioner was incorporated under the laws of Massachusetts with an authorized capital of 5,000 shares of no par value common stock. The directors declared the value of the capital stock to be $100 per share.

Also on July 1, 1946, the executors of Morse's estate transferred to Neilson all the physical and tangible property of A. H. Morse & Co., all of the cash and accounts receivable as of the close of business on July 30, 1946, up to but not in excess of $75,000, and the good will of the business. By a bill of sale dated July 1, 1946, Neilson transferred to the petitioner in consideration for the issuance of 4,829 shares of its capital stock, all the physical and tangible assets formerly belonging to A. H. Morse & Co., the right to use the name Albert H. Morse or A. H. Morse in connection with the name of the corporation and "Franchises". Neilson made this transfer solely in exchange for the stock of the petitioner and immediately after the exchange was in control of the petitioner. No gain or loss on this exchange was reported by Neilson in his individual income tax return for the year 1946. As of July 1, 1946, the value of "Franchises" entered on the books of the petitioner was $400,000. This is the amount which Neilson estimated to be the value of the twelve written franchises which he transferred to the petitioner. Petitioner sought to depreciate these twelve written franchises [1] over a ten-year period and claimed a deduction of $40,000 for "Amortization of Franchises" in its income tax returns for both the fiscal years ended June 30, 1947 and June 30, 1948. The commissioner ruled that the cost of the franchises to Neilson was $5,000 and that this amount was the proper basis for the petitioner's depreciation of them under Section 113(a)(8). The Tax Court sustained the commissioner and this appeal resulted.

The operative sections of the Internal Revenue Code for the determination of the proper basis for depreciation of the twelve written franchises are Sections 23(l), 23(n), 114, 113(b), 113(a)(5) and 113(a)(8). [2] As an exception to

---

1. The fifteen oral franchises granted to Neilson are not a subject of this litigation.

2. "§ 23. *Deductions from gross income.*

In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*

"(l) *Depreciation.* A reasonable allowance for the exhaustion, wear and tear

the general rule that the basis for depreciation of property is its cost to the taxpayer, Section 113(a) (8) provides that where a corporation acquires property in return for the issuance of its stock in connection with a transaction described in Section 112(b) (5) the basis of the property shall be the same as it would be in the hands of the transferor. There is no dispute that the transfer of the assets of Neilson, including the twelve written franchises, to the petitioner in exchange for the stock of the petitioner qualified under Section 112(b) (5) as a tax-free exchange. Accordingly, we must determine what the proper basis for depreciation of the twelve written franchises would have been if they were retained by Neilson.

Petitioner contends that Neilson inherited all the oral franchises formerly owned by Morse as a component part of the good will acquired by Neilson under Article Fourth of Morse's will.[3] Petitioner further argues that the twelve written franchises are the identical franchises held by Morse, except that they now took an improved form. Thus, petitioner concludes that under Section 113(a) (5) the basis of the written franchises is their fair market value on either September 11, 1945, the date of the death of Morse, or on July 1, 1946, when they were transferred to the petitioner.

However, it is clear to us that these twelve written franchises were neither "property * * * acquired by bequest, devise, or inheritance * * *", nor are they merely an improved form of the oral franchises formerly held by Morse. The Tax Court stated in its findings of fact, which were not contested: "* * * After his death, Neilson noti-

---

(including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income.

* * * * * *

"(n) *Basis for depreciation and depletion.* The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114."

"§ 114. *Basis for depreciation and depletion*

"(a) *Basis for depreciation.* The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property."

"§ 113. *Adjusted basis for determining gain or loss—*

* * * * * *

"(b) *Adjusted basis.* The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided."

"(a) *Basis (unadjusted) of property.* The basis of property shall be the cost of such property; except that—

* * * * * *

"(5) *Property transmitted at death.* If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *

"(8) *Property acquired by issuance of stock or as paid-in surplus.* If the property was acquired after December 31, 1920, by a corporation—

"(A) by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

"(B) as paid-in surplus or as a contribution to capital,

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

3. "*Article Fourth:* To George T. Neilson of Newton, Massachusetts, if he shall survive me, I give the good will of the business conducted by me in said Boston for many years as a produce broker and commission merchant, under the name of A. H. Morse and Company, together with the full and exclusive right to continue the use of my name in said business, either as it now stands or in combination with others. * * * *"

fied the concerns represented by the company of the provisions of the will giving him the right to succeed to the business and entered into negotiations for the handling of the accounts which the company had at the date of the death of Morse. He contacted them personally and by letter and solicited written agreements giving him, and a corporation he planned to organize to carry on the business, authority to be their exclusive sales representative in the New England states. As a result of this solicitation he obtained during the period from June 11 to June 19, 1946, twelve agreements in writing. * * * "

These facts reveal that the twelve written franchises were not "property * * * acquired by bequest, devise, or inheritance * * *," but were the result of mutual agreements reached between Neilson and twelve of the food processors subsequent to Morse's death. In Maguire v. Commissioner, 1941, 313 U.S. 1, 61 S.Ct. 789, 794, 85 L.Ed. 1149, the court construed the words, "property * * * acquired either by will or by intestacy * * *" of Section 113(a) (5) of the Revenue Act of 1928 and stated at p. 9, of 313 U.S., at page 794, of 61 S.Ct.: " * * * the foregoing provision of § 113(a) (5) was confined, with minor exceptions, to the specific property owned by the decedent at his death. To be sure, the taxpayer's right in the property in question had its source in the provisions of the will. But there is no indication that Congress in drafting § 113(a) (5) looked beyond the distribution of the estate by the executors. * * *" See also Helvering v. Reynolds, 1941, 313 U.S. 428, 61 S.Ct. 971, 972, 85 L.Ed. 1438 for the same holding with respect to the words "property * * * acquired by bequest, devise, or inheritance * * *." Furthermore, the agreements between Neilson and the twelve processors constituted an essential intervening event between the ownership of the oral franchises by Morse and the ownership of the written franchises by Neilson. Neilson's right to the written franchises did not even have their source in the provisions of Morse's will because Morse had no authority to transfer or assign any of the franchises held by him. At Morse's death the food processors were not bound to recognize Neilson as their exclusive sales representative. It must be remembered that the property the petitioner is here seeking to depreciate is the *right* to act as the exclusive sales representative of the twelve food processors. Neilson obtained that right, not as property acquired under Morse's will, but only after securing the authorizations of the processors subsequent to the death of Morse.

Also, the terms of the twelve written franchises reveal that they are property, distinct and separate from any property that Morse may have possessed at his death. Eleven of the twelve written franchises held by Neilson were to continue in full force and effect for ten years, except as noted above, whereas the oral franchises held by Morse were revocable by either party and therefore had no determinable business life. Furthermore, the petitioner states that the written franchises (1) guaranteed an income for ten years and (2) guaranteed a stability to the business for ten years. These valuable new terms in the written franchises clearly did not constitute "property * * * acquired by bequest, devise, or inheritance * * *" but were the result of the solicitations and negotiations of Neilson.

Of course Neilson had a better opportunity of successfully securing the written franchises than one who did not have the good will of the A. H. Morse & Company as a negotiating point. Undoubtedly the good will provision in Morse's will gave Neilson the "reasonable expectancy of preference in the race of competition." In re Brown's Will, 1926, 242 N.Y. 1, 150 N.E. 581, 582, 44 A.L.R. 510. But the good will acquired by Neilson had no terminable life and thus it was not depreciable under Section 23(*l*) of the Internal Revenue Code. X-Pando Corporation, 1946, 7 T.C. 48; U.S.Treas.Reg. 111, § 29.23

(1)–3. And we cannot agree with petitioner's contention that the franchises were merely a "component part" of the good will. The probability, however strong, that Neilson would obtain the franchises is obviously not the same thing as the actual acquisition of the franchises by him. It has been held that property is not "acquired", within the meaning of previous revenue acts and the Internal Revenue Code, even when one has the *right* to obtain property such as under an option. Helvering v. San Joaquin Fruit & Investment Co., 1936, 297 U.S. 496, 56 S.Ct. 569, 80 L. Ed. 824; Mack v. Commissioner of Internal Revenue, 3 Cir., 1945, 148 F.2d 62, certiorari denied, 1945, 326 U.S. 719, 66 S.Ct. 23, 90 L.Ed. 425.

A final contention of the petitioner is that the decision in Heiner v. Tindle, 1928, 276 U.S. 582, 48 S.Ct. 326, 72 L. Ed. 714, requires that the basis for depreciation of the twelve written franchises is their fair market value on July 1, 1946. Petitioner states that the Tindle case establishes the rule that when non-depreciable property becomes depreciable the basis for depreciation of the property is its fair market value at the moment of the change in status. The petitioner contends that since the franchises were non-depreciable while owned by Morse and first became depreciable when owned by Neilson, under the rule of the Tindle case the basis of the property is its fair market value. In the alternative, petitioner argues that since the franchises were not used by Neilson in trade or business, they first became depreciable when owned by the petitioner and again invokes its interpretation of the rule of Heiner v. Tindle.

The facts and the reasoning of the Tindle decision clearly do not substantiate petitioner's contentions. The property in that case which was formerly non-depreciable was the identical property that later became depreciable. In the instant case, as we have already held, the written franchises held by Neilson and the petitioner are distinct and separate from the oral franchises held by Morse at his death. Also, in the Tindle decision the court held that the words, "any transaction entered into for profit" in Section 214(a) (5) of the Revenue Act of 1918, c. 18, 40 Stat. 1057,[4] were broad enough to include the deduction of a *loss* sustained upon the sale of property originally purchased and used as the taxpayer's residence but converted exclusively to the production of rental income prior to the sale. The decision is thus not applicable here since there has been no conversion of the franchises from a non-business to a business use. Alpin J. Cameron, 1927, 8 B.T.A. 120; Alpin W. Cameron, 1930, 20 B.T.A. 305, affirmed 3 Cir., 1932, 56 F.2d 1021. Furthermore, in the Tindle case the court reasoned that since the property was used to produce taxable income prior to its sale, then Section 214, read as a whole, disclosed a general purpose to permit a deduction for a loss sustained for the period that the property was so used. In order to determine the amount of that deductible loss, the court remanded the case for a new trial to determine the fair market value of the property at the time of the conversion of the property in 1901 and permitted the deduction of any actual losses sustained between March 1, 1913 and the sale of the property in 1920. In the present action petitioner is seeking to use fair market value at the time of the "conversion" as a basis when that value is *greater* than the original cost of the property. But nothing said in Tindle and cases following it warrant the use of a basis higher than cost for determining loss upon a subsequent sale of the property. Joseph F. Cullman, Jr.,

4. "Deductions Allowed
   "Sec. 214. (a) That in computing net income there shall be allowed as deductions:
   *    *    *    *    *    *
   "(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business;
   *  *  *."

1929, 16 B.T.A. 991; Edward L. Parker, 1930, 19 B.T.A. 171; Plant v. Walsh, Collector of Internal Revenue, D.C.Conn. 1930, 43 F.2d 256. See U.S.Treas.Reg. 111, § 29.23(e)–1. If Neilson or the petitioner were allowed to use a basis stepped-up above the cost of the property, they would be deducting losses on the property never actually sustained. United States v. Ludey, 1927, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054; Burlington Gazette Co. v. Commissioner of Internal Rev., 8 Cir., 1935, 75 F.2d 577.

The decision of the Tax Court is affirmed.