**Revised August 18, 2000**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-30334

_____

GEORGE G. RODRIGUE, JR. and
RICHARD STEINER                                       Plaintiffs-Appellees,

versus

VERONICA HIDALGO RODRIGUE,                       Defendant-Appellant.
_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
July 7, 2000

Before GARWOOD, WIENER, and DENNIS, Circuit Judges:

WIENER, Circuit Judge:

Our task in this appeal, before us under Federal Rule of Civil Procedure 54(b), is to sort out and reconcile the respective rights and obligations of authors under federal copyright law and their spouses under Louisiana community property law when those two legal regimes intersect. Defendant-Appellant Veronica Hidalgo Rodrigue ("Veronica") asks us to reverse the district court's ruling that, by virtue of copyright law, her ex-husband, Plaintiff-Appellee George Godfrey Rodrigue, Jr. ("George"), holds <u>all</u> ownership rights in intellectual property that he created during the parties' marriage, to the exclusion of any rights she might otherwise have

in those creations by virtue of community property law.  Agreeing with Veronica, we reverse and remand with instructions.

I.

Facts and Proceedings

George and Veronica were married in Louisiana in 1967 and were divorced there in 1993.  In the absence of an election by them to have any other marital property regime apply, the Rodrigues' Louisiana marriage effected the "legal regime" of matrimonial property,[1] establishing between them a community of acquets and gains, commonly referred to simply as the community.[2]

During the marriage, George became a widely acclaimed, highly successful, and very prolific painter.  He created numerous paintings both during the existence of the community and after its termination, a number of which depicted a stylized and easily recognizable image of a blue dog.  Modeled after the family pet, Tiffany, the first blue dog painting was created in 1984.  George obtained certificates of copyright for some but not all of his paintings.

Divorce terminated the community that had existed between Veronica and George throughout their marriage.[3]  As a general proposition, the Louisiana Civil Code provides that, on termination

---

[1] La. Civ. Code art. 2334.

[2] La. Civ. Code art. 2327.

[3] La. Civ. Code art. 2356.

of the community, the property formerly belonging to it becomes subject to the provisions governing co-ownership[4]: "Each spouse owns an undivided one-half interest in former community property and its fruits and products"[5] until partition.[6]

Following the dissolution of his marriage with Veronica, George and co-Plaintiff-Appellee Richard Steiner, George's former business associate, filed this action in federal court seeking a declaration that George is the sole owner of intellectual property rights in all the paintings, particularly the blue dog image. They also sought to enjoin Veronica from (1) seeking a declaration of her co-ownership of those works, (2) making image transfers, and (3) suing for copyright infringement. Veronica filed a counterclaim in an effort to obtain a declaration that she owns an undivided one-half interest in (1) all intellectual property rights (including, but not limited to, the blue dog) generated during the existence of the community and (2) all post-community artworks that are "derivative" of that intellectual property. Veronica also sought an accounting for her half-interest in the proceeds of post-community use of those copyrights and derivatives.

After the parties filed cross-motions for summary judgment, the district court granted George's, grounding its decision in

_____

[4] La. Civ. Code art. 2369.1.

[5] La. Civ. Code art. 2369.2.

[6] La. Civ. Code art. 2369.8.

federal copyright preemption of state community property law. Veronica filed a motion for reconsideration which the court did not address, entering instead an order dismissing all of her claims. Veronica filed a second motion for reconsideration which the court granted to the extent that the previous order purported to resolve all claims of all parties. The court certified the preemption issue for immediate appeal pursuant to Rule 54(b) and stayed the remaining issues.

In a scholarly and thorough analysis, the district court concluded that, as a matter of <u>conflict</u> preemption, subjecting copyrights on works of the author-spouse to Louisiana community property law would damage federal interests in national uniformity and efficient exchange of copyrights. The court held that, as a result of this conflict, the state marital property law is preempted and cannot appertain. The court also considered 17 U.S.C. § 301, the express preemption provision of the federal Copyright Act of 1976 ("the Copyright Act" or "the Act") but concluded that it did not apply because Louisiana's community property law does not purport to provide rights "equivalent" to those specified by the Act. And the court rejected Veronica's "transfer" argument that, even though § 201(a) of the Copyright Act specifies that a copyright "vests initially" in the author at the time of creation of the work, it is transferred to the community by operation of law immediately following such initial vesting.

4

In concluding that federal law preempts state law in this instance, the district court voiced particular concern about the practicability of copyright co-management by spouses.  Still, in describing problems associated with co-management, the court flagged a possible solution:  The author-spouse could retain and exercise sole management and control of the copyright without depriving the non author-spouse of the "more tangible benefits."  Instead of so holding, however, the court demurred to Congress to decide whether to adopt that approach.

We are convinced that the district court visualized the correct method for reconciling the apparent conflict, but we disagree about the need for a congressional fix.  We therefore adopt the approach considered but rejected by that court, and we reverse.

II.

Analysis

We review the grant of summary judgment de novo, applying the same standards as the district court.[7]

George contends that provisions of both the Copyright Act[8] and the U.S. Constitution[9] preempt state community property law,

---

[7] Gardes Directional Drilling v. U.S. Turnkey Exploration, Inc., 98 F.3d 860, 864 (5th Cir. 1996).

[8] 17 U.S.C. § 101 et seq.

[9] Art. I, § 8, cl. 8 ("The Congress shall have power . . . [t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to

5

preventing his copyrighted artistic works from ever having become property of the community that was created by his marriage to Veronica and thereby exempting his copyrights from division and partition of the community after divorce. Section 201(a) of the Act specifies that a "[c]opyright in a work protected under this title vests initially in the author or authors of the work." In facial contrast, Louisiana Civil Code article 2338 declares that "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse" is community property. George insists that federal law, which specifies that the copyrights in the blue dog and other images "vest[] initially" in him as the "author," cannot be harmonized with state law, which would hold those self-same copyrights to have been community property and to belong now to the two former spouses in indivision. He argues that, because, under the Supremacy Clause, state law is preempted to the extent that it conflicts with federal law, his copyrights are immune from Louisiana community property law.

We do not disagree with George's general premise; we do disagree, though, with his expansive view of the scope of the conflict between copyright law and community property law, and thus with the extent of the preemptive effect of such conflict. We are satisfied that the conclusion we reach today — that an author-spouse in whom a copyright vests maintains exclusive managerial

their respective writings and discoveries.")

6

control of the copyright but that the economic benefits of the copyrighted work belong to the community while it exists and to the former spouses in indivision thereafter — is consistent with both federal copyright law and Louisiana community property law and is reconcilable under both.

We begin by delineating the precise scope of the language of § 201(a)[10] on which George bases his sweeping preemption theory. This subsection pertains only to "copyright," which, by the Act's own definition at § 106, is a finite bundle of but five fundamental rights, being the exclusive rights of reproduction, adaptation, publication, performance, and display.[11] Notably, none of these rights either expressly or implicitly include the exclusive right to enjoy income or any of the other economic benefits produced by or derived from copyrights.

Section 201(a) specifies that the copyright "vests" in the author. Except in its title,[12] this subsection never uses the words

---

[10] 17 U.S.C. § 201(a) provides: "Initial Ownership. – Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work."

[11] 17 U.S.C. § 106; H.R. Rep. No. 94-1476 at 61 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5674.

[12] "The title of an act cannot control its words, but may furnish some aid in showing what was in the mind of the legislature." Holy Trinity Church v. United States, 143 U.S. 457, 462, 12 S. Ct. 511, 513 (1892). "While the title of an act will not limit the plain meaning of the text, it may be of aid in resolving ambiguity." Maguire v. Commissioner, 313 U.S. 1, 9, 61 S. Ct. 789, 794 (1941) (citations omitted). We perceive no ambiguity here.

7

"own" or "ownership," and the Act does not speak of ownership per se or globally, but only in the sense of the five exclusive attributes listed in § 106.  "To vest" means to give an immediate, fixed right of present or future enjoyment; to accrue to; to be fixed; to take effect.[13]  "To own" means to have a good legal title; to hold as property; to have a legal or rightful title to; to have; to possess."[14]   When analyzed in the framework of the Act's inclusion of only five express attributes of ownership while omitting, inter alia, the attribute of enjoyment of economic benefits, Congress's reference to immediate vesting of the copyright, and not to vesting of ownership, supports the more limited construction advocated by Veronica.  We agree with her insistence that, in and of itself, "vesting" of the copyright and its five (and five only) statutorily delineated attributes in one spouse does not preclude classification of other attributes of ownership of a copyright as community property.  Moreover, by its very title, § 201(a) addresses only initial — not permanent — vesting of the copyright in the author.  And, even though the

---

[13] BLACK'S LAW DICTIONARY 1563 (6th ed. 1990).  We note in passing that the use of "vest" in statutes commonly has a temporal connotation, indicating the time at which an interest in property accrues to its rightful holder, rather than a substantive denotation of the nature or scope of the ownership of such an interest in property.

[14] BLACK'S LAW DICTIONARY 1105 (6th ed. 1990).

author's copyright arises at the moment of creation of the work,[15] the Act explicitly allows for subsequent vesting in non-authors, either jointly with the author or subsequent to him by virtue of transfer of all or lesser portions of the copyright.[16]

True, the copyright "vests initially" in the "<u>author</u>," and the "author" is the "originator," the "maker," the person to whom a work "owes its origin."[17] We do not question that George is the sole "author" of the copyrights here at issue. Neither do we mean to suggest that Veronica's co-ownership interests arise from co-authorship. We do conclude, though, that the language of § 201(a), providing that a bundle of but five specific rights, those listed in § 106, "vests initially" in the author, does not ineluctably conflict with any provision of Louisiana matrimonial property law

---

[15] 17 U.S.C. § 302(a); 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT, § 5.05(B)(1), at 5-59 (1998) [hereinafter NIMMER ON COPYRIGHT].

[16] 17 U.S.C. § 201(a), (d); <u>see</u> <u>Worth v. Worth</u>, 195 Cal. App.3d 768, 777 (1987) (noting that Act "provides only that the copyright 'vests initially in the author'; and nothing is found in the Act which either precludes the acquisition of a community property interest by a spouse, or which is otherwise inconsistent with community property law").

[17] <u>Committee for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."); <u>Burrow-Giles Lithographic Co. v. Sarony</u>, 111 U.S. 53, 57-58 (1884) ("An author in that sense is 'he to whom anything owes its origin; originator; maker; one who completes a work of science or literature.'").

that would recognize that Veronica does have an economic interest in George's copyrights.

As a useful framework for understanding the Louisiana Civil Code provisions on which our holding ultimately rests, we begin with general concepts of Louisiana property law. In the Civil Law, the bundle of rights that together constitutes full ownership[18] of property comprises three separate sub-bundles: (1) usus - the right to use or possess, i.e., hold, occupy, and utilize the property; (2) abusus - the right to abuse or alienate, i.e., transfer, lease, and encumber the property, and (3) fructus - the right to the fruits, i.e., to receive and enjoy the earnings, profits, rents, and revenues produced by or derived from the property.[19] In Louisiana, those three facets of ownership may be allocated in various combinations among different persons, with each having less than full ownership.[20] For example, the owner of

---

[18] Both the terms "full ownership" and "perfect ownership" appear in the Civil Code articles and in Louisiana case law (at least one case also uses the term "complete ownership") and are used roughly interchangeably. We use the term "full ownership" here to connote ownership of all three sub-bundles that together constitute the bundle of all ownership rights in property. See La. Civ. Code 477 (providing that the "owner" of a thing may use, enjoy, and dispose of it); Andrew L. Gates III, Partition of Land and Mineral Rights, 43 LA. L. REV. 1119, 1129 (1983) ("[P]erfect, or full, ownership consists of the right to use, the right to enjoy, and the right to dispose of the property."); see also La. Civ. Code art. 478 cmt. b ("Under this revision ownership is no longer distinguished into perfect and imperfect ownership.").

[19] See Giroir v. Dumesnil, 184 So.2d 1, 6 (La. 1966).

[20] Campbell v. Pasternack Holding Co., 625 So.2d 477, 480-81 (La. 1993).

10

a legal usufruct ("usufructuary") has the right to use the property burdened with the usufruct (usus) and to enjoy the fruits of that property (fructus), but does not have the right to alienate the property (abusus); that right belongs to the naked owner, albeit subject to the usufruct.[21]

When the property in question is a copyright, allocation of these attributes of ownership within the community property framework, according to the rule we announce today, produces a division similar to usufruct but different in combination: The author-spouse alone holds the elements of usus and abusus — a combination that comprises the exclusive rights to possess, use, transfer, alienate, and encumber the copyright as he sees fit — free of any management, consent, or participation of the non-author spouse.[22] Obviously, § 106's "five fundamental rights" of

---

[21] Id. at 484 n. 13; In re Stein, 508 So.2d 1377, 1380 (La. 1987); see also La. Civ. Code arts. 538, 539.

[22] We leave for another day the question whether the author-spouse, in exercising his exclusive rights to exploit and alienate the copyright both during the existence of the community and after its dissolution, has some agency or fiduciary-like duty to the non-author spouse, such as the duty to act in good faith and not in a manner contrary to her interests, akin to the obligation of a usufructuary to serve as a "prudent administrator" of the usufruct and to "faithfully fulfill" his obligations toward the naked owner, see, e.g., La. Civ. Code art. 571, or to the duty of a mineral lessee to act as a "reasonably prudent administrator," even though not a fiduciary to his lessor. See, e.g., La. Rev. Stat. § 31:122.
For reasons that are not apparent to us, neither party has invited us to consider Civil Code article 2369.3, which imposes an affirmative duty on a spouse "to preserve and to manage prudently former community property under his control" and makes him "answerable for any damage caused by his fault, default, or neglect." As we do not reach this issue, we merely flag this Civil

11

reproduction, adaptation, publication, performance, and display are includable harmoniously in the conjointment of <u>usus</u> and <u>abusus</u> in the author-spouse.  But the community during its existence (and the former spouses or other successors after its termination) holds the element of <u>fructus</u>, i.e., the right to receive and enjoy the economic benefits produced by or derived from the copyright.[23]  The exclusive right of the author-spouse to the <u>abusus</u> of the copyright, like that of the naked owner of property burdened by a usufruct, is nevertheless subject to the continuing <u>fructus</u> rights of the community so long as the copyright remains vested in the author-spouse, unless partition should modify the situation.

With those general Civil Law property concepts in mind, we turn next to the Civil Code's articles on marital property.  In broadest form, the Code embodies the concept of "equal management" of property belonging to the community: Each spouse, acting alone,

---

Code article and note its congruity with the exclusive management approach to copyrights under community property law that we adopt today.  <u>See also</u> KATHERINE SHAW SPAHT & LEE HARGRAVE, LOUISIANA CIVIL LAW TREATISE, MATRIMONIAL ESTATES § 7.20, at 436-37 (1997) (comparing former spouse's duty under § 2369.3 to usufructuary's duty as "prudent administrator").

[23] <u>See</u> La. Civ. Code art. 551 (defining kinds of fruits: "Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions."); La. Civ. Code art. 2339 ("The natural and civil fruits of the separate property of a spouse . . . are community property. . . .").  Note that, because the author enjoys the attribute of <u>fructus</u> jointly with the non-author spouse, the author does not acquire a full ownership of the copyright through the civilian doctrine of confusion.  <u>See</u> La. Civ. Code art. 622.

12

has the right to manage, control, or dispose of community property.[24] If this general principle were to be applied across the board to copyrights created by one spouse in community, however, an irreconcilable conflict with the author-spouse's five exclusive § 106 rights of reproduction, adaptation, publication, performance, and display would result. In apparent recognition that such conflicts would likely occur in connection with "movables issued or registered in" the name of one of the spouses,[25] the Civil Code specifies, as an exception to equal management, that such spouse alone has exclusive management rights (the combination of usus and abusus) but preserves for the spouses jointly the right to enjoy the benefits (the fructus) of such property. We conclude that copyrights come within the category of exceptional movables contemplated by such provisions.[26]

---

[24] La. Civ. Code art. 2346.

[25] La. Civ. Code art. 2351.

[26] We are cognizant of (and do not necessarily disapprove) the "transfer" approach of the California court in Worth, holding that, under § 201(a), the copyright "vests initially" in the author-spouse at the time of creation, and thereafter, according to § 201(d), is automatically transferred "by operation of [state community property] law," to the matrimonial community. Worth v. Worth, 195 Cal. App.3d 768, 774 (1987). Our approach is consistent yet analytically distinct; the author-spouse alone (at the time of creation and at all times thereafter, absent voluntary transfer of the copyright) is vested with the § 106 five exclusive "fundamental rights"; those rights are never automatically transferred to the community. The fruits of the copyright, nevertheless, are community property at the "very instant" they are acquired. See Beatty v. Vining 147 So. 2d 37, 43 (La. App. 1962).

13

Numerous examples of exclusive management of community property and shared enjoyment of those assets exist: A paycheck issued by the employer in the name of the employee-spouse alone can be cashed, deposited, or otherwise negotiated only by that spouse; yet, the proceeds of the paycheck, representing earnings of one spouse in community, belong to the community. Likewise, a motor vehicle purchased with community funds but titled in the name of one spouse alone can be sold, leased, or encumbered only by the named spouse[27]; yet the proceeds of any such disposition belong to the community. And when, during the existence of the community, one spouse joins an existing partnership or joins in the formation of a new one, the partner-spouse has the exclusive right to participate in the partnership and to manage, alienate, or encumber that interest; yet the economic benefits — and liabilities — flowing from the partnership belong to the community.[28]

In concluding that copyrights should be treated the same as paychecks, cars, and partnership interests, we rely initially on Louisiana Civil Code article 2351 which proclaims that "[a] spouse has the exclusive right to manage, alienate, encumber, or lease movables issued or registered in his name as provided by law." This right of exclusive management of those kinds of movables is not coterminous with the community but continues as long as the

[27] See La. Civ. Code art. 2351.

[28] La. Civ. Code art. 2352.

14

copyright is vested in the author-spouse, even after partition of the property formerly belonging to the community is complete.[29] Under Louisiana law a copyright is a "movable,"[30] and under federal law a copyright is issued or registered in the name of the author-spouse.[31] In compatible combination, these two systems of law provide for the author-spouse's <u>exclusive management</u> of copyrights created during the existence of the community and thereafter until completion of the partition of the property of the former community, while at the same time ensuring that the non author-spouse is not deprived of his or her right to one-half of the economic benefits of the copyright.

The <u>economic benefits</u> that flow from particular types of one-spouse assets, including but not limited to cars, paychecks, partnership interests — and copyrights — can inure to the benefit of the community without doing violence to the legal results

---

[29] La. Civ. Code art. 2369.5 & cmt. a (creating exception to Civ. Code art. 2369.4). Civil Code article 2369.4 replaces the general rule of equal management that exists during the existence of the community with the rule that, on divorce, each spouse must obtain concurrence of the other to alienate, encumber, or lease former community property. But according to Civil Code article 2369.5, such concurrence is <u>not</u> required for community property managed <u>exclusively</u> by one spouse, even after divorce. This single-spouse management would continue after partition for as long as the copyright remains vested in the author-spouse, unless the situation is modified by the partition.

[30] <u>See</u> La. Civ. Code art. 475 ("All things corporeal or incorporeal, that the law does not consider as immovables [e.g., tracts of land and their component parts, La. Civ. Code art. 462] are movables.").

[31] 17 U.S.C. § 201(a).

intended by the Louisiana Legislature or Congress in providing for vesting of title in one spouse only, results designed with third parties in mind, not spouses or other co-owners. In the context of these clearly established concepts and principles, we conclude that federal copyright law does not conflict with, and therefore does not preempt, Louisiana community property law to the extent of denying the entitlement of the non-author spouse (Veronica) to an undivided one-half interest in the economic benefits of the copyrighted works created by the author (George) during the existence of the community, and of the derivatives of such works following its termination.

In confirmation of this conclusion, we look first to the express preemption provision in the Act itself. When we do so we reach the same initial conclusion as did the district court, that the Act does not mandate the monolithic preemption of Louisiana community property law in toto. Section 301(a) of the Act states that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title." For openers, "the general scope of copyright" is not broad enough to cover the entire body of marital property law; that is, copyright law does not occupy the entire "field" and thereby totally eclipse all state marital

16

property law.[32]  We do not understand George to quarrel with this basic premise.

Indeed, the Copyright Act, in defining the scope of its own preemptive effect, expressly acknowledges that state law continues to operate unless there is a direct and irreconcilable clash between a state law right and an exclusive right under the Act with which such state law right is equivalent.  Section 301(b) expresses that "[n]othing in [§ 301(a) of the Copyright Act] annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."[33]  To repeat, the only ownership rights that the Act grants exclusively to the author are the rights to (1) reproduce, (2) prepare derivative works, (3) distribute copies, (4) perform, and (5) display the work.[34]  Among the entire "bundle" of rights comprising full ownership of property generally, the preemptive effect of federal copyright law extends only to this explicitly-enumerated, lesser-included quintet.  As those five exclusive rights of the author conflict with Louisiana's general principle of

---

[32] Compare this with ERISA's total preemption of the field of retirement or health benefits in the private sector.  See, e.g., Boggs v. Boggs, 520 U.S. 833, 117 S. Ct. 1754 (1997).

[33] 17 U.S.C. § 301(b)(3).

[34] 17 U.S.C. § 106.

17

equal management of community property, that principle cannot operate. Instead Civil Code article 2351's special exception for exclusive management by one spouse applies.

Notably absent from the Copyright Act's exclusive sub-bundle of five rights is the right to enjoy the earnings and profits of the copyright. Nothing in the copyright law purports to prevent non-preempted rights from being enjoyed by the community during its existence or thereafter by the former spouses in community as co-owners of equal, undivided interests.

The § 301 preemption provision of the Copyright Act was intended to accomplish a "fundamental and significant change" in the existing state of the law, under which published works were governed by federal copyright law and unpublished works were governed by the common law of copyright. The new statute substituted a single, uniform system in place of the existing anachronistic and highly complicated dual system. That goal was accomplished in part by specifying a limited preemption which trumps only those common law or state law rights that are equivalent to federal copyright,[35] such as state laws that purport to grant copyright protection to particular works. We discern nothing in the Act's plain wording or legislative history to indicate that Congress — fully aware of the existence of community

_____

[35] H.R. Rep. No. 94-1476 at 129-30 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5743-44; see also NIMMER ON COPYRIGHT § 1.01(B)(1), at 1-11 (citing same and clarifying meaning of "equivalent" rights).

18

property laws in a number of states –– had any intention of preempting that entire body of non-federal law as well.[36] Our conclusion is buttressed by the explicit clarification in § 301(b)(3), noted above, that the preemptive effect does not extend beyond the subject matter of the Act.

George nevertheless insists in the alternative that, even if § 301 preemption does not apply, "conflict preemption" does because designating copyrights as community property would do substantial damage to important federal interests.[37] In this argument, George fails (or refuses) to recognize the jurisprudential corollary that "[s]tate family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden."[38] He attempts to bolster his conflict preemption argument by demonizing the Louisiana Civil Code doctrine of equal management: If copyrights were to be deemed community property, George contends, both he and Veronica would have the right, acting alone, to control, encumber, or dispose of the copyrights, which in turn would impair federal

---

[36] See Brown v. Ames, 201 F.3d 654, 661 (5th Cir. 2000) (noting that case for federal preemption is particularly weak when Congress is aware of operation of state law and nevertheless stands by both concepts and tolerates whatever tension might exist between them).

[37] Gade v. National Solid Waste Management Assoc., 505 U.S. 88, 98 (1992); Hines v. Davidowitz, 312 U.S. 52, 67 (1941) (state law is preempted if it "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress").

[38] Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979) (citing United States v. Yazell, 382 U.S. 341, 352 (1966)).

19

interests in uniformity and efficient exchange of rights to ensure predictability,[39] and in providing incentives to authors to create.[40] George argues that (1) copyrights will not be amenable to efficient or predictable exchange if spouses have equal rights to impair or dispose of such rights, possibly in conflicting manners, (2) predictability and uniformity will not be served if varying state laws are applied to copyright management issues, and (3) authors will have less incentive to create if they must share the fruits of their creative works.  His reliance on these three arguments is misplaced.

George's first contention is negated by our ready recognition today that the author-spouse has the exclusive right to manage and control the copyright, i.e., to deal with it in any manner that is not inconsistent with federal copyright law.  This conclusion is supported by our acknowledgment that the general rule of equal management is pre-empted <u>vis à vis</u> copyrights and by Louisiana Civil Code article 2351's provision for the exclusive management of movables registered or issued in the name of one spouse.  As equal management does not apply to copyrights, federal interests in predictability and efficiency are not impaired by it.  A potential purchaser or licensee will still be able to obtain good "title"

---

[39] <u>See</u> <u>Brown</u>, 201 F.3d at 660 (citing legislative history).

[40] <u>See</u> <u>Goldstein v. California</u>, 412 U.S. 546, 555 (1973).

from the author-spouse alone free of interference from the other spouse.[41]

George's second contention does not persuade us that allowing differing state laws — in particular, community property laws that differ from state to state among the eight that presently have some version of such marital property regimes[42] — to apply just to the economic benefit derived from copyrights will somehow damage the federal interests in predictability and uniformity. Indeed, the Act itself subjects copyrights to varying state laws for other purposes. For example, copyrights are expressly transferrable by conveyance,[43] and such conventional transfers are governed by individual, <u>non-uniform</u> state contract laws; yet no significant obstruction of federal interests has occurred to prompt preemption.[44] In like manner, copyrights are expressly transferable

---

[41] NIMMER ON COPYRIGHT § 6A.04, at 6A-26 to -27 (noting that solution for this "worst disorder" of "co-owner" spouses issuing rival grants of title to the copyrighted work would be to place sole management and control in author-spouse).

[42] <u>See</u> David Nimmer, <u>Copyright Ownership by the Marital Community: Evaluating Worth</u>, 26 UCLA L. REV. 383, 384 n.4 (1988) (listing eight states: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington) [hereinafter Nimmer, UCLA L. REV.].

[43] 17 U.S.C. § 201(d)(1).

[44] H.R. Rep. No. 94-1476, at 132 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 5659, 5748 ("Nothing in this bill derogates from the rights of parties to contract with each other and to sue for breaches of contracts. . . .").

by testamentary disposition or in intestacy,[45] either of which is likely to produce co-ownership of undivided interests in the copyright among the author's heirs or legatees. State law governs such death-related transfers and the resulting co-ownerships they produce, and does so routinely without impairing federal interests.[46] The litigation and management issues arising from contractual conveyance and post-mortem devolution of copyrights[47] has not resulted in obstruction of federal interests leading to preemption of state law, and we discern no reason why the community property result we decree today should fare differently.

As for George's third contention — that community entitlement to the "fruits" of copyrights would lessen the author's incentive to create or exploit his works, thereby conflicting with the

---

[45] 17 U.S.C. § 201(d)(1).

[46] See Nimmer, 26 UCLA L. REV., at 386-87 n. 13 (noting that proposition that inheritance of copyrights is governed by state laws is "to obvious to have spawned litigation").

[47] In addition to permitting these two means of copyright transfer, the Act defines "transfer of copyright ownership" to include "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright." 17 U.S.C. § 101. Even though the Act explicitly prohibits involuntary transfers by any governmental body or other official or organization, 17 U.S.C. § 201(e), it specifies that "[t]raditional legal actions that may involve transfer of ownership, such as bankruptcy proceedings and mortgage foreclosures, are not within the scope of [the involuntary transfer] subsection." H.R. Rep. No. 94-1476, at 124 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5739. These other types of transfer, like contractual conveyance and inheritance, are subject to varying state laws, yet Congress has not perceived any inherent obstruction of federal interests in such additional modes of alienation, and neither do we.

22

federal interest in encouraging authorship — we decline to assume globally that the commercial and economic interests of spouses during marriage are so at odds that one spouse would be disinclined to create copyrightable works merely because the economic benefits of his endeavors would inure to the benefit of their community rather than to his separate estate. As for a former spouse's lack of incentive following divorce, we perceive the presence of the proverbial stick and carrot. To mix metaphors, the carrot is the half-a-loaf incentive of the author to exploit pre-divorce copyrights to the best of his ability rather than shelve them and receive no benefit whatsoever; the stick is exemplified by the provision of the Louisiana Civil Code that specifies an affirmative duty "to manage prudently" former community property that remains under one spouse's exclusive control.[48] Indeed, that article imposes a higher duty on a spouse managing former community property than the Code otherwise imposes on that same spouse during the marriage[49] or on a third party co-owner who is not a former spouse.[50] "The reason for imposing a higher standard of care in managing former community property is that, after termination of the community property regime, the law no longer assumes that a spouse who has former community property under his control will act

---

[48] See supra n. 22 (citing La. Civ. Code art. 2369.3).

[49] La. Civ. Code art. 2354 (liable for "fraud or bad faith").

[50] La. Civ. Code art. 799 (liable for damage "caused by his fault"); see La. Civ. Code art. 2369.3 cmt. a.

23

in the best interest of both spouses in managing it."[51]  Although we need not and therefore do not reach the question of specific management duties, we observe that this affirmative duty imposed by Louisiana law refutes George's argument regarding a former spouse's disincentive to exploit fully a copyright simply because the economic benefits are subject to community property laws.  We are convinced that the duty imposed by Louisiana is consistent with — not contrary to — the federal interest in encouraging authorship and exploitation of copyrights, just as we are convinced that most if not all authors will continue to exploit their copyrights after termination of the community rather than cutting off their noses to spite their faces by letting copyrighted works languish.

## III.

## Conclusion

In the end, we disagree with the district court only to the extent that it held the conflict between Louisiana community property law and federal copyright law irreconcilable absent congressional intercession.  We therefore reverse the court's grant of summary judgment declaring George alone to be the owner of the blue dog and other copyrights created during his marriage to Veronica.  Accordingly, we remand this case, appealed pursuant to Rule 54(b), for entry of an appropriate ruling regarding Veronica's

---

[51] La. Civ. Code art. 2369.3 cmt. a; see Katherine Shaw Spaht, Co-Ownership of Former Community Property: A Primer on the New Law, 56 LA. L. REV. 677, 699 (1996).

rights with respect to the copyrights and for consistent disposition of all remaining issues still pending before that court.

Specifically, we instruct the district court to determine on remand which copyrights are subject to the rules of community property law that we announce today, either directly as works created during the existence of the community of acquets and gains or derivatively as works created after the termination of the community but based on pre-divorce works.[52] Even though the parties briefed the issue of derivative works in the instant appeal, the district court has not yet ruled on it so that issue is not ripe for our consideration and disposition. In holding that George alone is the owner of all copyrights in the artistic works, the district court denied Veronica's cross-motion for a summary judgment declaring her economic interests in the copyrights, including determination of which post-divorce works were derivative of the artwork created during the marriage. That ruling, however, was not certified to be a final judgment ready for appeal under Rule 54(b). As we now hold that Veronica does have economic rights with respect to the copyrights at issue, the district court must determine on remand which works are derivative as well.

---

[52] See 17 U.S.C. § 101 (defining "derivative work"), § 103(a) (providing that subject matter of copyright includes derivative works).

25

We further instruct the district court, following such determinations, to enter judgment recognizing Veronica's entitlement to an undivided one-half interest in the net economic benefits generated by or resulting from copyrighted works created by George during the existence of the community and from any derivatives thereof. Such judgment also must recognize George's continued entitlement to the exclusive control and management of the five rights in such intellectual property specified in § 106, albeit subject to any duty that he might ultimately be held to owe Veronica to "manage prudently" all such copyrights and derivatives thereof under his control.[53]

We acknowledge that it is for the state court that has jurisdiction over judicial partition and settlement of the Rodrigue community to determine both the proper method for establishing the value of Veronica's share of these net economic benefits and the proper procedure for delivery of that share to her, whether that be, for example, by (1) an accounting based on the present value of the appraised fair market value of the fully exploited copyrights and derivatives during their expected lifetimes, (2) periodic accountings and payments to Veronica as the copyrights and derivatives are exploited and proceeds are derived from them, or (3) some other altogether different procedure.[54] It follows, of

---

[53] La. Civ. Code art. 2369.3. Cf supra n.22.

[54] The court is required to apply the detailed rules in La. Rev. Stat. § 9:2801(4) in partitioning assets and liabilities

26

course, that Veronica may continue to pursue judicial partition of former community property in that forum.

Finally, in the interest of judicial economy, we reserve to this panel limited appellate jurisdiction over this case with respect to future appeals —— if any —— from judgments rendered by the district court on remand in implementation of our instructions. REVERSED and REMANDED WITH INSTRUCTIONS.

formerly belonging to the community to ensure that each spouse receives property of equal net value.